NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| VCOM INTERNATIONAL MULTI-MEDIA CORP. d/b/a PROJECTORSCREEN.COM, PROJECTORSCREENSTORE.COM, ALLTECSTORES.COM, and ALLTEC STORES,<br><br>*Plaintiff*,<br><br>v.<br><br>BRIAN ROBERT GLUCK a/k/a BRIAN GLUCK, PROJECTORSCREEN.COM, OPTIMIZING, LLC d/b/a, PROJECTORSCREENCO.COM, JOHN DOES 1-10, and ABC COMPANIES 1-10,<br><br>*Defendants*. | Civil Action No. 14-3398<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

### I.    INTRODUCTION

This matter comes before the Court on Defendant Brian Gluck's motion for summary judgment. D.E. 34. Plaintiff Vcom International Multi-Media Corp.'s ("Vcom") claims primarily concern various employment-related causes of action pertaining to Gluck's alleged misappropriation of Vcom's confidential information. The Court considered the written submissions of the parties and considered the motion without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons that follow, Gluck's motion is granted in part and denied in part.

## II.  FACTS AND PROCEDURAL HISTORY

The facts of this matter are derived from the record. They are reviewed in the light most favorable to the non-moving party, Plaintiff. *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (noting that in motion for summary judgment "a court must view the evidence in the light most favorable to the opposing party" (internal quotation marks omitted)).

Brian Gluck is a former employee of Vcom. Second Amended Complaint ¶ 9 (D.E. 13). Before his termination in May 2013, Gluck held the position of manager for Vcom's Alltec Division. *Id.* Vcom operates a number of websites through its Alltec Division, which function "as an e-commerce center, enabling customers to register for an account, purchase various products through the online shopping cart merchant feature, and receive direct shipping from door-to-door." *Id.* at ¶ 5. Through an Alltec website, known as projectorscreenstore.com ("ScreenStore.com"), Vcom sells a variety of projector screens, such as "home theater screens, portable screens, auditorium screens, business screens, and classroom screens." *Id.* at ¶ 7. Vcom generates all of its e-commerce sales as a result of online keyword searches. *Id.* at ¶ 8. For example, an online search of the words "projector screen" may show Vcom's website ScreenStore.com as one of the search engine results. *Id.* at ¶ 9.

On August 28, 2011, Gluck engaged in a Skype conversation with a third party where he stated that he may buy a website called projectorscreens.com. D.E. 48, Ex. 1. Gluck said that he might "use it as leverage in [his] company to get a piece of [his] division, or to go into business . . . against [ScreenStore.com]." *Id.* Gluck told the third party that he had "all of the screen connections and all of the sales data, etc." and that he "could easily replicate [ScreenStore.com] for [himself]." *Id.* Gluck said that "it's a matter of do i [sic] get it rollign [sic] while i [sic] keep my regular job until its all ofa [sic] sudden #1?" *Id.*

In September 2011, Gluck suggested to Vcom's president, Sheldon Goldstein, that Vcom should consider purchasing other websites with similar names to ScreenStore.com. Certification of Brian R. Gluck ("Gluck Cert.") ¶ 19 (D.E. 34-12). Gluck explained that purchasing those websites would "secure [ScreenStore.com's] spot on top of the search engines." *Id.* at Ex. D. In October 2011, Gluck informed Goldstein that he believed the two best options to purchase were projectorscreen.com ("Screen.com") and projectorscreens.com. *Id.* at Ex. E. Gluck told Goldstein that the price for each website was $15,000 and $19,000, respectively. *Id.* Goldstein asked Gluck whether the prices of those websites were negotiable. *Id.* Gluck responded that he had already been negotiating with the websites' owners and that he was "[n]ot sure if [Screen.com] will budge." *Id.* The following day Gluck personally purchased Screen.com for $5,500 of his own money. D.E. 46, Ex. 14., ¶ 52; D.E. 46, Ex. 17 at 7; Deposition of Sheldon Goldstein ("Goldstein Dep.") (D.E. 33-10) at 102:4-13. Gluck purchased Screen.com anonymously and never told Goldstein that the website was available for $5,500. Declaration of Randall Cole ("Cole Dec.") (D.E. 45) ¶ 30.m; Goldstein Dep. at 102:4-13. Gluck did not disclose to anyone at Vcom that he had purchased Screen.com. D.E. 34-2 at 4.

In November 2011, Gluck began operating Screen.com as a website offering sales as an affiliate of Amazon.com. Certification of Ross Malaga, Ex. 1 at 7 (D.E. 47). More than a year later in February 2013, Vcom's management discovered that Screen.com was competing with ScreenStore.com, offering the same projector screens and accessories as Vcom's ScreenStore.com. Cole Dec. ¶ 6. On March 20, 2013, Vcom discovered that ScreenStore.com had hidden text links embedded within it so that if an online user clicked the link, he or she would be redirected to Screen.com. *Id.* ¶ 8.

In late March or early April of 2013, Randall Cole, Vcom's Vice President of Finance,

3

asked Gluck whether he was aware of Screen.com. *Id.* at ¶ 9. According to Cole, Gluck denied having any knowledge of the website. *Id.* However, in a certification submitted in connection with this motion, Gluck now claims that he was using Screen.com "to experiment with the affiliate channel as a potential way to monetize products for which it might not be a sound strategy to warehouse or drop ship products." Gluck Decl. ¶ 31. In other words, Gluck claims that while he was employed by Vcom, "there was no actual competition and [he had] no intent to compete" with Vcom. *Id.* at ¶ 32. Gluck claims that the "the only error that [he] made with the [Screen.com] site is that [he] did not keep track of the commissions that trickled in over time and turn them over to Vcom." *Id.* Gluck acknowledges that the total amount of commissions he earned through Screen.com while employed by Vcom was $787. *Id.*

On May 23, 2013, Vcom terminated Gluck. *Id.* at ¶ 2. Vcom alleges that after Gluck's termination he unlawfully retained and copied numerous documents and files that contained Vcom's confidential and proprietary information. Cole Dec. ¶¶ 16, 20-22. Some examples include Vcom's budget information, sales data, wholesale costs, negotiated shipping prices, names of suppliers, sales forecasts, profit margins, and 14,382 customer names, email addresses, and residential addresses. *Id.*

Vcom filed a complaint against Gluck in state court, which Gluck removed to this Court pursuant to federal question subject matter jurisdiction. D.E. 1. Vcom subsequently filed a Second Amended Complaint ("SAC") (D.E. 13)[1] alleging the following twenty-two causes of action: (1) "Breach of the Employment Agreement," (2) "Breach of Duty of Loyalty," (3) "Breach of Fiduciary Duty," (4) "Conversion," (5) "Constructive Trust," (6) "Unjust Enrichment," (7)

---

[1] Gluck filed an answer asserting two counterclaims under the New Jersey Law Against Discrimination. Gluck's counterclaims are addressed in a separate Opinion.

4

"Tortious Interference with Contractual Relations," (8) "Tortious Interference with Prospective Economic Advantage," (9) "Recoupment/Disgorgement of Salary and Benefits," (10) "Unfair Competition & Deceptive Trade Practices Under N.J.S.A. 56:4-1," (11) "Common Law Infringement and Unfair Competition," (12) "Copyright Infringement," (13) "Fraud and Misrepresentation," (14) "Misappropriation of Confidential Information," (15) "Competition With Employer or Principal," (16) "Disclosure of Domain Registrant Owner and Information," (17) "Declaratory Judgment," (18) "Breach of June 4, 2012 Employment Modification Agreement," (19) "Trademark Infringement," (20) "Digital Millennium Copyright Act Violation," (21) "Violations of Computer Related Offenses Act," (22) "Breach of Website Terms and Conditions." Gluck moved for summary judgment on all counts, which Vcom opposed.[2]

### III. LAW AND ANALYSIS

#### A. Standard of Review

A moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" when a dispute over that fact "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Importantly, "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.* A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Liberty Lobby*, 477 U.S. at 248). "Where the record taken as a whole could not lead a reasonable trier of fact to find for the non-moving party, there is no genuine issue for

---

[2] Glucks's initial brief (D.E. 34-2) will be referred to as "Gluck Br." and his reply (D.E. 54) as "Gluck Reply." Vcom's opposition brief (D.E. 53) will be referred to as "Vcom Opp."

5

trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted). "When analyzing the sufficiency of the evidence, the court must view the facts and any reasonable inferences drawn therefrom in the light most favorable to the party opposing summary judgment." *InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 159-60 (3d Cir. 2003) (citing *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992)).

Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Under those circumstances, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23. However, to withstand a motion for summary judgment, the nonmoving party need only "come forward with evidence which, if believed, would support a finding in its favor." *In re Bressman*, 327 F.3d 229, 237 (3d Cir. 2003).

### B. Counts to which Vcom Admits Summary Judgment is Appropriate

In Vcom's opposition brief, it concedes that "its copyright infringement claim in the Twelfth Count of [its] Second Amended Complaint is deficient because it did not register its websites or the images thereon as online works with the United States Copy Office as required by 17 U.S.C. § 411." Vcom Opp. at 41. Therefore, summary judgment is granted as to Count Twelve.

Vcom also concedes that it is not asserting a claim for trademark infringement in the name of ScreenStore.com. Vcom Opp. at 44. As such, partial summary judgment is granted as to Count Nineteen.

### C. Lack of Damages

Gluck argues that summary judgment should be granted on many of the counts alleged in

the SAC because Vcom failed to set forth any evidence of damages caused by Gluck's alleged wrongdoing. Gluck Br. at 17. Gluck notes that the only damages Vcom suffered is the $787 that he earned as commission by operating Screen.com while employed by Vcom. *Id.*; Gluck Dec. ¶ 32. The Court agrees.

Here, aside from the $787 that Gluck concedes he should have returned to Vcom, Vcom presented no evidence as to any damages caused by Gluck's alleged wrongful conduct. Vcom sets forth no proof of lost sales, lost contracts, wrongful profits earned by Gluck, or any other evidence to show that it was damaged. In fact, in its opposition brief, Vcom does not address Gluck's argument that Vcom failed to prove damages. Instead, in a letter submitted after briefing of this motion was complete, Vcom argued that it was damaged due to ScreenStore.com's decrease in Google search engine rankings when the words "projector screen" or "projector screens" were searched. D.E. 63, 64, 65. The reason(s) for this decrease and the amount of damages, if any, suffered by Vcom is entirely speculative as Vcom has produced no competent evidence to support its theory. In short, ScreenStore.com's change in search engine rankings, assuming that the change in fact occurred, is not supported by any evidence of resulting damages.

Thus, partial summary judgment is granted in favor of Gluck as to Counts One, Six,[3] Seven,

---

[3] Gluck also moves for summary judgment on Count Six (unjust enrichment) in its entirety arguing that recovery under a theory of quasi-contract "is impossible when a valid contract governs the rights of the parties." Gluck Br. at 24. While it is true that a party may not ultimately recover under both theories, the question of whether a valid contract governs the parties' dispute is one that is best left for the jury and inappropriate to decide at the summary judgment stage. Accordingly, Vcom's breach of contract and unjust enrichment claims may both proceed past summary judgment. *See Clean Earth Dredging Techs., Inc. v. SLRD Co. - Mullica Hill, LLC*, No. 12-1989, 2013 U.S. Dist. LEXIS 63355, at *27 n.8 (D.N.J. May 2, 2013) (noting that Plaintiff may assert claim for unjust enrichment "at trial as an alternative theory of liability should its breach of contract claim fail"); *Project Dev. Grp., Inc. v. O.H. Materials Corp.*, 766 F. Supp. 1348, 1355-56 (W.D. Pa. 1991) (permitting breach of contract and unjust enrichment claims to proceed past summary judgment).

Eight,[4] Ten, Eleven, Thirteen, Fourteen,[5] Eighteen, Nineteen, Twenty-One, and Twenty-Two. Unless otherwise noted, however, these Counts are not dismissed in their entirety, but rather Vcom's damages are capped at $787. To be clear, Vcom may not recover $787 on each count, but rather Vcom's potential total recovery as to all of the listed counts is limited to $787.

### D. Breach of the Duty of Loyalty and Fiduciary Duty

As noted above, Gluck argues that his motion for summary judgment should be granted as to Vcom's claims for breach of the duty of loyalty and breach of fiduciary duty because of Vcom's failure to present proof of damages. Although the Court agrees with Gluck that actual damages are limited to $787, Gluck is also subject to potential disgorgement of salary during the period of his alleged disloyalty.

In *Kaye v. Rosefielde*, the New Jersey Supreme Court recognized the "principle that a court may order disgorgement of an employee's compensation for his or her breach of the duty of loyalty." 223 N.J. 218, 232 (2015). The Court explained that "[t]he remedy [of disgorgement] is substantially rooted in the notion that compensation during a period in which the employee is disloyal is, in effect, unearned." *Id.* With that principle in mind, the Court held that "an employer

---

[4] For the reasons stated in Section III.E, *infra*, summary judgment is granted to Vcom as to Counts Seven and Eight in their entirety.

[5] In regard to Vcom's misappropriation claims, it argues that "[t]he Court can and should draw a reasonable inference that by Gluck's retention of Vcom's confidential information post-employment he used it to his advantage." Vcom Opp. at 5. The Court disagrees. After full discovery, Vcom must show more than merely a logical inference that Gluck used its proprietary data based on his possession of the information. The best evidence would, of course, be actual proof that Gluck used Vcom's confidential information. Short of such evidence, Vcom could potentially point to subject matter that Gluck actually used and argue that such information was derived from Vcom's confidential data and thereby create a genuine issue of material fact. Here, Vcom has done neither, and the Court finds that Vcom has failed to demonstrate that there is a genuine issue of material fact showing that Gluck has in fact used Vcom's confidential information. Nonetheless, even if Vcom had presented evidence that Gluck was using its confidential information, Vcom must still show damages.

may seek disgorgement of a disloyal employee's compensation as a remedy for the breach of the duty of loyalty, with or without a finding of economic loss." *Id.* at 236.

Here, disgorgement is a viable theory of recovery should Vcom ultimately prevail on its claims for breach of the duty of loyalty and breach of fiduciary duty.[6] In fact, Gluck concedes this point. Gluck Reply at 5 (acknowledging that Vcom's "only possible theory of recovery is disgorgement of salary"). Ultimately, the amount of disgorgement is dependent upon the following factors: "the employee's degree of responsibility and level of compensation, the number of acts of disloyalty, the extent to which those acts placed the employer's business in jeopardy, and the degree of planning to undermine the employer that is undertaken by the employee." *Kaye*, 223 N.J. at 237. Therefore, on its breach of loyalty and breach of fiduciary duty claims, Vcom may seek disgorgement of Gluck's salary in addition to $787 in actual damages. Summary judgment is granted in favor of Gluck to the extent that Vcom seeks additional damages on these claims.

Gluck further argues that Vcom has not set forth sufficient evidence to demonstrate that he

---

[6] As discussed below, an employee can breach a duty of loyalty by usurping a corporate opportunity. *See Torsiello v. Strobeck*, 955 F. Supp. 2d 300, 311–12 (D.N.J. 2013); *Cameco, Inc. v. Gedicke*, 157 N.J. 504, 521-22 (1999). Although New Jersey courts have not explicitly held that usurpation of a corporate opportunity warrants disgorgement of the disloyal employee's compensation, case law suggests that disgorgement is an available remedy. *Cameco*, 157 N.J. at 519 (noting generally that "an employer may seek forfeiture of its employee's compensation . . . [in] breach-of-duty cases"); *Parker v. Parker*, 2016 N.J. Super. Unpub. LEXIS 2720, *96-97 (Ch. Div. Dec. 22, 2016) (noting that a court "may order disgorgement of an employee's compensation as a remedy for a breach of loyalty" while conducting analysis of usurpation of corporate opportunity (internal quotation marks omitted)). Here, the parties did not explicitly address this issue, but for purposes of summary judgment, the Court will assume that Vcom may recover disgorgement of Gluck's salary should it prevail on its claim for usurpation of a corporate opportunity. The Court is not precluding the parties from raising this issue at a later date once they have had to opportunity to perform greater research on the subject. However, the Court notes that it can find no discernable basis why the remedy of disgorgement would be available for a breach of the duty of loyalty and not for usurpation of a corporate opportunity, which is a type of breach of the duty of loyalty.

9

breached his duty of loyalty or fiduciary duty to Vcom by usurping a corporate opportunity. Gluck Br. at 22. Gluck maintains that this claim fails because (1) Vcom rejected the opportunity to purchase Screen.com and (2) Vcom did not have a legitimate interest in pursuing the opportunity. The Court finds neither of these arguments persuasive.

New Jersey considers four factors when determining whether an employer breached the duty of loyalty to his or her employer: "1) the 'existence of contractual provisions' relevant to the employee's actions; 2) the employer's knowledge of, or agreement to, the employee's actions; 3) the 'status of the employee and his or her relationship to the employer,' e.g., corporate officer or director versus production line worker; and 4) the 'nature of the employee's conduct and its effect on the employer.'" *Kaye*, 223 N.J. at 230 (quoting *Cameco, Inc. v. Gedicke*, 157 N.J. 504, 521-22 (1999). In essence, the Court "considers the parties' expectations of the services that the employee will perform in return for his or her compensation, as well as the 'egregiousness' of the misconduct that leads to the claim." *Id.*

One way an employee may breach the duty of loyalty is by usurping a corporate opportunity from his or her employer. A claim under the corporate opportunity doctrine requires proof of the following five elements:

> (1) that there is presented to a corporate officer a business opportunity; (2) that the corporation is financially able to undertake that opportunity; (3) that the opportunity is, by its nature, in the line of the corporation's business and is of practical advantage to it; (4) that the opportunity is one in which the corporation has an interest or a reasonable expectancy; and (5) that by embracing the opportunity, the self-interests of the officer will be brought into conflict with the interests of the corporation.

*Torsiello v. Strobeck*, 955 F. Supp. 2d 300, 311–12 (D.N.J. 2013) (internal quotation marks omitted).

Here, the record indicates that in October 2011 Gluck presented Vcom with the opportunity

to purchase Screen.com for $15,000. Goldstein asked Gluck whether the price was negotiable, and Gluck replied that he was "[n]ot sure if [Screen.com] will budge." The next day Gluck purchased Screen.com for $5,500 without disclosing the lower price to Vcom. In short, Vcom never rejected purchasing Screen.com for $5,500 because it was not presented with the opportunity to buy the website at that price. And Vcom specifically asked if a lower price could be had. Moreover, there is a genuine issue of material fact as to whether Vcom was interested in purchasing Screen.com. Goldstein's questions to Gluck regarding whether Screen.com's price of $15,000 was negotiable indicate that Vcom may have been interested in the website had it been available at a lower price. Therefore, Gluck's motion for summary judgment on Vcom's claim for usurping a corporate opportunity is denied.

Additionally, there is a genuine material issue of fact as to whether Gluck breached his fiduciary duty and duty of loyalty to Vcom. Gluck argues that he was not competing with Vcom during his employment and that his use of "affiliate links on an otherwise 'dead' site as research . . . was well within [his] discretion." Gluck Br. at 23. Vcom counters that Gluck was engaging in "secret competition with Vcom during his employment" by operating Screen.com. Vcom Opp. at 32. The Court finds that there is a genuine material issue of fact regarding whether Gluck was competing against Vcom through Screen.com or whether he was operating the website as an experiment without any intention to make a profit. Accordingly, Gluck's motion for summary judgment on Vcom's breach of the duty of loyalty and fiduciary duty is denied.

### E. Conversion

Vcom argues that summary judgment is inappropriate on its claim for conversion because Gluck used Vcom's data that was stored on his company iPad to develop his competing website. Vcom Opp. at 49. Gluck acknowledges that some of Vcom's proprietary information may have

been stored on his personal computer, but he maintains that he never copied or used that data. Gluck Dec. 43. "The elements of conversion are: (1) 'the property and right to immediate possession thereof belong to the plaintiff' and (2) 'the wrongful act of interference with that right by the defendant.'" *Latef v. Cicenia*, No. A-5747-13T2, 2015 WL 10458543, at *5 (N.J. Super. Ct. App. Div. Mar. 14, 2016) (quoting *First Nat'l Bank v. N. Jersey Trust Co.*, 18 N.J. Misc. 449, 452 (Sup. Ct. 1940)). Here, Vcom has shown a genuine issue of material fact by presenting evidence that Gluck copied Vcom's confidential and propriety information onto an external computer storage device and uploaded documents on a cloud server after he was terminated. Cole Dec. ¶¶ 16, 20-22. Some examples of Vcom's confidential information that Gluck retained post-employment include Vcom's budget information, sales data, wholesale costs, negotiated shipping prices, names of suppliers, sales forecasts, profit margins, and 14,382 customer names, email addresses, and residential addresses. *Id.* This evidence creates a genuine issue of material fact as to whether Gluck unlawfully kept Vcom's confidential and proprietary information after he was terminated. Accordingly, Gluck's motion for summary judgement on Vcom's conversion claim is denied.[7]

### F. Tortious Interference with Contractual Relations and Prospective Economic Advantage

In order to prove a claim of tortious interference with contractual relations and a prospective economic advantage, a plaintiff must show: "(1) a protected interest -- either a prospective economic or contractual relationship; (2) malice, i.e., intentional interference without justification; (3) a reasonable likelihood that the interference caused the loss of the (prospective

---

[7] Should Vcom ultimately prevail on its conversion claim, it is entitled to the return of all confidential, proprietary, and trade secret information (as well as any and all copies thereof) in Gluck's possession.

12

economic or contractual) gain; and (4) resulting damages." *Baxter Healthcare Corp. v. HQ Specialty Pharma Corp.*, 157 F. Supp. 3d 407, 420 (D.N.J. 2016) (internal quotation marks and footnotes omitted). The only difference between a claim for interference with contractual relations and a prospective economic advantage is that interference with contractual relations requires the additional element of an existing contract. *Id.* at 420 n.39.

Here, Vcom argues that Gluck is liable for tortious interference because "before his employment ended Gluck completed and submitted merchant applications to two of Vcom's largest suppliers." Vcom Opp. at 50. Vcom does not, however, identify any contracts with its suppliers that were interfered with as a result of Gluck contacting them. Additionally, Vcom presented no evidence that it was damaged or suffered a loss of prospective economic or contractual gain as a result of Gluck contacting Vcom's suppliers. For those reasons, summary judgment is granted in favor of Gluck as to Vcom's claims for tortious interference with contractual relations and a prospective economic advantage.

### G. Digital Millennium Copyright Act

Vcom argues that Gluck violated 17 U.S.C. § 1202 of the Digital Millennium Copyright Act ("DMCA") by (1) distributing false copyright management information and (2) removing and/or altering copyright management information. Gluck Br. at 25-26.

Section 1202(a) of the DMCA provides in relevant part that "[n]o person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement" provide or distribute copyright management information that is "false." Section 1202(b) of the DMCA prohibits the removal and/or alteration of copyright management information. Section 1202(b) specifically states that

> [n]o person shall, without the authority of the copyright owner or
> the law (1) intentionally remove or alter any copyright management

> information, (2) distribute or import for distribution copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law, or (3) distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law, knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.

17 U.S.C. 1202(b). Copyright management information is defined by Section 1202(c) in relevant part as

> any of the following information conveyed in connection with copies or phonorecords of a work or performances or displays of a work, including in digital form
>
> . . . .
>
> (1) The title and other information identifying the work, including the information set forth on a notice of copyright.
>
> (2) The name of, and other identifying information about, the author of a work.
>
> (3) The name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright.
>
> . . . .
>
> (6) Terms and conditions for use of the work.

17 U.S.C. 1202(c).

In this case, Vcom argues that Gluck violated Section 1202(a) of the DMCA by knowingly reproducing several screenshots of Vcom's websites on his personal website, Briangluck.com, without displaying Vcom's copyright notice that appears on its webpages. Vcom Opp. at 43. Vcom contends that Gluck included language on his personal webpage falsely indicating that he authored those websites and that Vcom had retained Gluck as an outside consultant to perform

marketing services for Vcom. *Id.* Finally, Vcom maintains that Gluck violated Section 1202(b) by intentionally removing and/or altering Vcom's logos and copyright notices and then reproducing the altered copyright management information on his personal website. *Id.*

Vcom provides no competent evidence as to how its copyright management information was falsified, removed, or altered. It is not clear to the Court which Vcom websites were allegedly modified or how they appeared before and after modification. In other words, Vcom failed to produce evidence of its websites in their original form and the modified screenshots of those websites as they appeared on Gluck's personal webpage. Instead, Vcom submitted a screenshot of Screen.com, but not a screenshot of any of its websites displaying the copyright management information in its original form. Declaration of Robert Carroll, Ex. 2 (D.E. 46-2). Without presenting a screenshot (or some other visual depiction or description) of the copyright management information as it appears on Vcom's websites, the Court is unable to ascertain whether Vcom's copyright management information was falsified, altered, or removed in violation of the DMCA. As a result, Vcom has not met its burden in demonstrating a violation of the DMCA.

The Court notes that Vcom submitted evidence of source code[8] from Screen.com, which it claims indicates certain images were unlawfully removed from one of Vcom's websites and displayed on Screen.com. *Id.* at ¶ 7, Ex. 2 & 3. Vcom, however, did not submit any expert testimony to explain the significance and meaning of the source code. The absence of expert testimony precludes the Court from considering this technical and unexplained information. *See* F.R.E. 702. The Court is not in a position to review the source code and draw the logical inferences argued for by Vcom.

---

[8] "Source code" is defined as "[a] set of instructions, written in programming language, that usually must be translated to machine instructions before the program can be run on a computer." Harry Newton, *Newton's Telecom Dictionary* 1174 (Steve Schoen et al. eds., 30th ed. 2016).

For those reasons, Gluck's motion for summary judgment as to Count Twenty is granted.

### H. Trademark Infringement

Gluck moves for summary judgment on Vcom's trademark claims arguing that his display of Vcom's marks on his personal website was nominative fair use. The Court considers the following three factors to determine whether a defendant has met its burden in proving the affirmative defense[9] of nominative fair use:

> 1. Is the use of plaintiff's mark necessary to describe (1) plaintiff's product or service and (2) defendant's product or service?
>
> 2. Is only so much of the plaintiff's mark used as is necessary to describe plaintiff's products or services?
>
> 3. Does the defendant's conduct or language reflect the true and accurate relationship between plaintiff and defendant's products or services?

*Century 21 Real Estate Corp. v. Lendingtree, Inc.*, 425 F.3d 211, 228 (3d Cir. 2005).

Here, Gluck has presented insufficient evidence to create a genuine issue of material fact regarding nominative fair use. Gluck makes no argument as to the application of the three factors outlined by the Third Circuit in *Century 21 Real Estate*. Moreover, Gluck's statement of undisputed material facts is silent as to any pertinent facts necessary for the Court to conduct a nominative fair use analysis. Gluck does not state which of Vcom's marks he used, why it was necessary for him to use those marks, and/or the context of how those marks appeared on his

---

[9] Normally the Court would not address the fair use defense until after making a determination that the plaintiff met its burden in showing a likelihood of confusion. *See Century 21 Real Estate Corp. v. Lendingtree, Inc.*, 425 F.3d 211, 222 (3d Cir. 2005) ("Once plaintiff has met its burden of proving that confusion is likely, the burden then shifts to defendant to show that its nominative use of plaintiff's mark is nonetheless fair."). Here, Gluck does not contest whether Vcom has met its burden in demonstrating a likelihood of confusion. Gluck only argues that its use of Vcom's marks was nominative and fair. Gluck Br. at 18-19. Therefore, in order to reach Gluck's nominative fair use argument, the Court will assume (without deciding) that Vcom met its burden in showing a likelihood of confusion.

website. Gluck's motion for summary judgment as to Vcom's claims for trademark infringement is therefore denied. As noted in Section III.B *infra*, however, Vcom's potential recovery on these Counts is limited to $787 in actual damages. Plaintiff may not recover statutory and treble damages under the Lanham Act because it did not plead, or provide any evidence of, knowing counterfeit infringement. Plaintiff does not appear to make any allegations concerning counterfeit marks. *See Coach, Inc. v. Fashion Paradise, LLC*, No. 10-4888, 2012 WL 194092, at *3 (D.N.J. Jan. 20, 2012) (explaining that in order for a court to award treble or statutory damages in trademark action the "plaintiff must show that the defendant intentionally used the plaintiff's trademark, knowing that it was a counterfeit" (internal quotation marks omitted)); *Pennzoil-Quaker State Co. v. Smith*, No. 05-1505, 2008 WL 4107159, at *33 (W.D. Pa. Sept. 2, 2008) (concluding that because "Plaintiff has failed to establish a claim for federal trademark counterfeiting, statutory damages are not available").

### I. Attorneys' Fees

Gluck also moves for summary judgment as to Vcom's request for attorneys' fees because Vcom "fails to identify any contact, statute or rule on which such an award may be based." Gluck Br. at 27. In response, Vcom points to multiple Counts in the SAC that permit the recovery of attorneys' fees for the prevailing party. Vcom Opp. at 54-55. At this stage in the proceedings, there has not been an adjudication on the merits of Vcom's claims. Accordingly, a decision awarding or denying attorneys' fees to Vcom is premature at this time. *See Swietlowich v. Bucks Cty.*, 620 F.2d 33, 35 (3d Cir. 1980) ("In order to recover attorneys' fees and costs, plaintiff must show at least some success on the merits."); *Granelli v. Chi. Title Ins. Co.*, No. 10-2582, 2012 WL 2072648, at *12 (D.N.J. June 8, 2012). As a result, Gluck's motion for summary judgment on this point is denied.

### IV. CONCLUSION

For the reasons set forth above, Gluck's motion for summary judgment is granted in part and denied in part. An appropriate Order accompanies this Opinion.

Dated: March 27, 2017

　　　　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　　　John Michael Vazquez, U.S.D.J.