NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

VCOM INTERNATIONAL MULTI-MEDIA
CORP. d/b/a PROJECTORSCREEN.COM,
PROJECTORSCREENSTORE.COM,
ALLTECSTORES.COM, and ALLTEC
STORES,

        *Plaintiff*,

    v.

BRIAN ROBERT GLUCK a/k/a BRIAN
GLUCK, PROJECTORSCREEN.COM,
OPTIMIZING, LLC d/b/a,
PROJECTORSCREENCO.COM, JOHN DOES
1-10, and ABC COMPANIES 1-10,

        *Defendants*.

Civil Action No. 14-3398

**OPINION**

**John Michael Vazquez, U.S.D.J.**

### I.    INTRODUCTION

This matter comes before the Court on Plaintiff Vcom International Multi-Media Corp.'s ("Vcom") motion for summary judgment as to Defendant Brian Gluck's counterclaims. D.E. 33. Gluck's counterclaims concern allegations of adverse employment action due to his rheumatoid arthritis. The Court considered the written submissions of the parties and considered the motion without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons that follow, Vcom's motion is granted.

### II.    FACTS AND PROCEDURAL HISTORY

The facts of this matter are derived from the record.  They are presented in the light most favorable to the non-moving party, Defendant.  *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (noting that in motion for summary judgment, "a court must view the evidence in the light most favorable to the opposing party" (internal quotation marks omitted)).  However, as to Gluck's counterstatement of material facts, any paragraphs which do not cite to the record will not be considered as creating a genuine issue of material fact.[1]

Vcom is a multi-divisional company specializing in the manufacturing and distribution of technology products and services for schools, churches, government agencies, industry, and general consumers.  Second Amended Complaint ("Compl.") ¶ 3.  Vcom sells popular brands of electronics, including its own brands, through catalogues on the internet.  *Id.* ¶ 4.  Vcom operates a group of specialty websites that sell projector screens, white boards, furniture, headphones, and other popular specialty technology products through one if its divisions known as "Alltec."  *Id.* One of the website domains maintained by Vcom under its Alltec Division is projectorscreenstore.com.  *Id.*

---

[1] In Gluck's counterstatement of material facts, many paragraphs fail to include citations to the record when denying paragraphs of Vcom's statement of material facts.  Pursuant to Local Rule of Civil Procedure 56.1, the opponent of a summary judgment motion shall furnish a responsive statement of material facts addressing whether the opponent agrees or disagrees with each paragraph of the movant's statement of material facts.  When addressing any facts in disagreement, the opponent is required to provide citations "to the affidavits and other documents submitted in connection with the motion."  L. Civ. R. 56.1.  Failure to provide citations to the record results in those facts being deemed undisputed for purposes of the summary judgment motion.  *Gaviria v. Columbus Bakery, Inc.*, 11-6999, 2013 WL 6008495, at *1 n.1 (D.N.J. Nov. 12, 2013) ("As Defendants have failed to provide such citations to the record in support of their disagreement, many of Plaintiffs' facts are deemed undisputed for purposes of this summary judgment motion."); *Friedman v. Bank of Am., N.A.*, No. 09–2214, 2012 WL 1019220, at *6 n.2 (D.N.J. Mar. 26, 2012) ("[T]he court will consider any statement of fact which was not denied by the Plaintiffs with a citation to the record as undisputed for the purposes of this motion for summary judgment.").  Accordingly, those paragraphs in Gluck's counterstatement of material facts that lack citations to the record will not create a genuine issue of material fact for purposes of this motion.

Gluck was hired in May 2005 by Vcom as an at-will employee with a starting salary of $35,000. Certification of David M. Walsh ("Walsh Cert."), Ex. E ("Gluck Dep. Day 2") at 47:17-48:8. At all relevant times during Gluck's employment, he reported to Sheldon Goldstein, the President and part-owner of Vcom. *Id.* at 55:7-22; Walsh Cert. Ex. F. ("Goldstein Dep.") at 6:1-7. Throughout Gluck's employment with Vcom, Goldstein provided Gluck only with positive performance reviews and Gluck received multiple substantial increases in his salary. Gluck Dep. Day 2 at 55:23 to 56:18; Walsh Cert., Ex. D, ("Gluck Dep. Day 1") at 125:5 to 129:10. During Gluck's employment with Vcom he also had his own business as an independent consultant, although the record is not clear exactly what his business consisted of or how often Gluck worked, on average, as a consultant.

According to Gluck, Vcom found out sometime in 2006 that he had a medical condition related to his wrists. Gluck Dep. Day 2 at 176:23 to 178:17. On or about April 4, 2012, Gluck was diagnosed with rheumatoid arthritis. Declaration of Brian Gluck ("Gluck Dec.") ¶ 4 (D.E. 53-1), Ex. A. Gluck's physician wrote a prescription that Gluck should be excused from work for four weeks. *Id.* According to Gluck, he provided the note to Goldstein and "explained the particulars of the condition," but Goldstein responded that he was not going to put the note in Gluck's personnel file because it could be detrimental to Gluck's career. *Id.* ¶ 5. Nonetheless, Goldstein offered, and Gluck accepted, a reduced four-day work week and the ability to work from home.[2] *Id.* ¶ 6.

---

[2] The record is not clear as to the limitations or terms, if any, of Gluck's ability to work from home. In his declaration, Gluck provides a citation to "time and attendance records from April until June 2012" of "his revised schedule and work from home [schedule]." Gluck Dec. ¶ 6, Ex. B. The material cited, however, does not contain Gluck's time and attendance records. Instead, the documents cited are 2013 emails between Vcom's human resources employees indicating that Gluck worked 11.5 days from home between January 1, 2012 through May 31, 2012. *Id.*

Sometime in mid-2012, Vcom became concerned that its Alltec Division was financially underperforming and began considering whether it should sell or downsize the division.  Goldstein Dep. at 97:21 to 99:20; Walsh Cert. Ex. G, Deposition of Randall Cole ("Cole Dep") (D.E. 33-11) at 16:2 to 17:25; Certification of Sheldon Goldstein ("Goldstein Cert.") ¶ 10-11 (D.E. 3). According to Goldstein, Gluck informed Goldstein that he believed Alltec and Vcom were not a good fit together but that Alltec could be very successful under different ownership.  Goldstein Dep. 98:10-15; Goldstein Cert. ¶ 12.  Vcom decided that it would first try to sell Alltec, and if unsuccessful, it would begin downsizing the division.  Goldstein Dep. at 97:21 to 98:14.  To assist with the prospective sale, Vcom hired an investment banker, Sonenshine Partners, at the cost of $40,000.  Goldstein Cert. ¶ 14.

Goldstein asked Gluck to head the attempted sale of Alltec.  Goldstein Cert. ¶ 13.  In May 2012, Goldstein and Gluck entered into negotiations through email regarding Gluck's salary and work schedule if he were to take the position of "Managing Director of Alltec Stores/Headphones.com."  Walsh Cert., Ex. M.  Gluck was concerned that if he took the position as Managing Director of Alltec and the division was subsequently sold, he would have no assurances that the new owner of Alltec would continue to employ him.  Goldstein Cert. ¶ 15. During their negotiations, Gluck, who was earning $100,000 at the time, represented that he should receive a salary increase because he claimed that was able to make $200,000 annually working 40 hours per week if he were to engage solely in his independent consulting business.  Walsh Cert. Ex. M.

On June 4, 2012, Vcom and Gluck entered into a written agreement where Vcom agreed to reduce Gluck's work week and increase his salary.  Walsh Cert., Ex. N.  Gluck's salary was increased to $160,000 annually and he was not permitted to work more than three days per week

(21.75 hours) without Vcom's prior authorization. *Id.* Gluck's increase in salary combined with the reduction in number of days worked resulted in Gluck's prorated salary being the same as his prior earnings had he been working full time. *Id.* Goldstein stated that he understood that Gluck would use the other two days seeking possible alternate employment if Alltec was sold and working in his (Gluck's) consulting business. *Id.*; Goldstein Cert. ¶ 17. Notably, nowhere in the email negotiations or in the written employment agreement[3] is there any indication that Gluck's reduced workweek was a result of his rheumatoid arthritis. Additionally, the email negotiations and employment agreement are silent as to whether Gluck was permitted to work from home during the days he was working for Vcom.

By the end of 2012, Vcom had not found a viable purchaser for Alltec and Gluck had made only one presentation to a potential buyer. Gluck Dep. Day 2 at 83:11 to 85:10; Walsh Cert. Ex. L; Goldstein Cert. ¶ 19. As a result, Vcom's Board of Directors began considering selling the Alltec Division directly to Gluck. *Id.* In January 2013, Gluck offered to purchase Alltec for $650,000. Gluck did not have sufficient funds to pay the full amount, so he would have to raise $245,000 by offering preferred stock of Alltec to outside investors. Gluck Dec. ¶ 13. The record does not indicate that Gluck raised the additional capital. Gluck's offer of $650,000 was significantly less than $1.2 million that Vcom was seeking for Alltec. *Id.* ¶ 10.

By April 2013, Vcom realized that it would not be able to sell Alltec to a viable purchaser. *Id.* Without a legitimate purchaser, Vcom decided to make personnel adjustments to Alltec. During an April 12, 2013 Board meeting, Alltec concluded that "[a]ction will be taken involving

---

[3] The employment agreement stated that Gluck would remain an at-will employee of Vcom that could be terminated "at any time and for any or no reason." Walsh Cert. Ex. N.

the downsizing of Brian Gluck and the restructuring of his group." *Id.* It was at this meeting that Goldstein told the Board that he planned to terminate Gluck. Gluck Dec. ¶ 13.

At some point in early 2013, Vcom learned about a competing website to its projectorscreenstores.com website. Goldstein Cert. ¶ 23; Cole Dep. 68:17 to 69:7. The competing website was operating as projectorscreen.com. The competing website had a similar appearance and offered the same products as Vcom's projectorscreenstores.com. Goldstein Cert. ¶ 23. In April 2013, Vcom's Vice President of Finance, Randall Cole, asked Gluck if he was familiar with the competing website. Cole Dep. 106:20 to 107:24; Goldstein Cert. ¶ 26. Gluck responded that he was not aware of projectorscreen.com and that he would look into it and get back to Cole, which, according to Cole, Gluck never did. Cole Dep. 106:20 to 107:24. Within a day or two of Cole asking Gluck about projectorscreen.com, the website changed to a blog about projector screens. Goldstein Cert. ¶ 27. Shortly thereafter, Gluck ceased reporting to work at Vcom's offices.[4] *Id.* ¶ 30.

On April 15, 2013, Gluck activated his "out of office" automatic reply, which indicated he would be out for the next two business days. Walsh Cert. Ex. O. On April 17, 2013, Gluck lodged a harassment complaint by email to Ellen Hart, Vcom's Human Resources Administrator, against a co-worker related to an anonymous posting Gluck received on his personal website, Briangluck.com, which read "You F#ck'n suck you no good rat. Karma will get you." *Id.*; Goldstein Cert. ¶ 31. In his April 17 email, Gluck stated that because he was concerned for his own safety, he was going to work from home "[u]ntil Vcom has demonstrated that they are taking this incident seriously, and that there is action being taken with an acceptable resolution in sight."

---

[4] Vcom eventually learned that Gluck had created and operated the competing projectorscreen.com website, which is the subject matter of Vcom's complaint against Gluck. D.E. 13; Cole Dep. at 68:17 to 69:7.

Walsh Cert. Ex. O. On or about April 22, 2013, Gluck began a two-week vacation. *Id.*; Goldstein Cert. ¶ 32. On May 6, 2013, the day before Gluck was scheduled to return from vacation, he sent an email stating that he was "having [his] kitchen redone" that week, that he was going to work from home, and that he would be back in the office the following Tuesday (May 14, 2013). Walsh Cert. Ex. O; Goldstein Cert. ¶ 33. On May 14, and for half a day on May 15, Gluck returned to the office.

On May 15, Goldstein emailed Gluck and stated that Gluck was required to be in the office the following week on May 21, 22, and 23, 2013 for his full three-day schedule. Walsh Cert., Ex. O. Vcom had prepared a termination letter on May 17, 2013 and planned to provide it to Gluck the following week when he was in the office. Walsh Cert. Ex. Q; Goldstein Cert. ¶ 34. On May 20, Gluck emailed Goldstein stating that he was changing his work schedule to May 22, 23, and 24. Walsh Cert. Ex. O. Then, on May 22, Gluck took the day off. *Id.* On the morning of May 23, 2013, Gluck left a voicemail message for Human Resources Administrator Hart advising that he needed to schedule a doctor's appointment related to his rheumatoid arthritis. Wash Cert. Ex. H, Deposition of Ellen Hart ("Hart Dep.") ¶ 12:12 to 13:6. Later on May 23, 2013, Gluck called Hart and informed her that he possessed a doctor's note indicating that he could not work for the next two months. *Id.* Gluck also emailed Goldstein advising that "[a]s Ellen [Hart] likely told you, my doctor has prescribed that I take a 2 month leave of absence from work." Walsh Cert., Ex. O; Goldstein Cert. ¶ 36.

That same day, around 3:30 p.m., Vcom sent an email to Gluck granting his request for a leave of absence pursuant to the Family and Medical Leave Act ("FMLA"). Goldstein Cert. ¶ 38; Gluck Dec. ¶ 18. Vcom granted Gluck's request even though he never submitted the doctor's note. Gluck Dep. Day 2 at 152:11 to 153:11. According to Gluck, he was "immediately disconnected

from [Vcom's] computer system, from [its] email system and locked out of the building." Gluck Dec. ¶ 18. Gluck stated that "outside contacts" were told that he would not be available because he was going on sick leave. *Id.* Gluck was also required to return the Vcom equipment in his possession. *Id.*

The day after requesting the two-month FMLA leave, Gluck retracted his request claiming that his doctor's note did not state that he had to be out of work for two months. Hart Dep. 41:8-17. Gluck claims that over the next couple of weeks, he attempted on multiple occasions to discuss some accommodation that would permit him to return to work, but Vcom refused to have any discussions with him on the topic. *Id.* ¶ 19.

In June 2013, Vcom determined that Gluck was ineligible for FMLA leave because he had not worked the requisite number of hours in the previous year to qualify. Gluck Dep. Day 2 at 153:12 to 154:3; Goldstein Cert. ¶ 39. On June 27, 2013, Vcom informed Gluck by telephone that his employment was terminated and his position as Alltec Manager had been eliminated. Gluck Dep. Day 2 155:21 to 158:14. According to Goldstein, Vcom has not replaced Gluck and no employee has held the Alltec Manager position since Gluck's termination. Goldstein Cert. ¶ 42. Instead, all staff members that had been reporting to Gluck began reporting to Goldstein. *Id.* ¶ 43.

In response to a lawsuit filed against Gluck by Vcom, Gluck asserted two counterclaims against Vcom under the New Jersey Law Against Discrimination ("LAD").[5] D.E. 71. Gluck alleged that he was discriminated against and discharged due to his rheumatoid arthritis and that

---

[5] This opinion only addresses Gluck's counterclaims. The Court has supplemental subject matter jurisdiction over Gluck's state law counterclaims by virtue of the federal claims asserted by Vcom in its complaint.

Vcom failed to accommodate his disability. *Id.* Vcom moved for summary judgment, which Gluck opposed.[6]

## III. LAW AND ANALYSIS

### A. Standard of Review

A moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" when a dispute over that fact "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Importantly, "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.* A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Liberty Lobby*, 477 U.S. at 248). "Where the record taken as a whole could not lead a reasonable trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted). "When analyzing the sufficiency of the evidence, the court must view the facts and any reasonable inferences drawn therefrom in the light most favorable to the party opposing summary judgment." *InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 159-60 (3d Cir. 2003) (citing *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992)).

Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Under those

---

[6] Vcom's initial brief (D.E. 33-1) will be referred to as "Vcom Br." and its reply (D.E. 56) as "Vcom Reply." Gluck's opposition brief (D.E. 53) will be known as "Gluck Opp."

9

circumstances, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23. However, to withstand a motion for summary judgment, the nonmoving party need only "come forward with evidence which, if believed, would support a finding in its favor." *In re Bressman*, 327 F.3d 229, 237 (3d Cir. 2003).

## B. New Jersey Law Against Discrimination

The LAD provides, in part, that it shall be an unlawful employment practice for an employer to discriminate against an employee because of his or her disability. N.J.S.A. 10:5-12. "The essential purpose of the LAD is the eradication of the cancer of discrimination." *Quinlan v. Curtiss-Wright Corp.*, 204 N.J. 239, 258 (2010) (internal quotation marks omitted). "The LAD was enacted to protect not only the civil rights of individual aggrieved employees but also to protect the public's strong interest in a discrimination-free workplace." *Lehmann v. Toys R Us, Inc.*, 132 N.J. 587, 600 (1993) (citing *Fuchilla v Layman*, 109 N.J. 319, 335 (1988)). In this matter, Gluck alleges that he was discharged due to his rheumatoid arthritis and that Vcom failed to provide him a reasonable accommodation. For the reasons discussed below, Gluck fails to demonstrate a genuine issue of material fact and Vcom is entitled to judgment as a matter of law.

### i. Discriminatory Discharge

In a claim for discriminatory discharge under the LAD, an employee is required to present evidence that: "(1) he was in the protected group; (2) he was performing his job at a level that met his employer's legitimate expectations; (3) he nevertheless was fired; and (4) the employer sought someone to perform the same work after he left." *Zive v. Stanley Roberts, Inc.*, 182 N.J. 436, 450 (2005); *see also Victor v. State*, 203 N.J. 383, 409 (2010). If an employee satisfies these elements there is a presumption that the employee's discharge was discriminatory. *Zive*, 182 N.J. at 458.

"The defendant then bears the burden of rebutting that presumption by articulating a legitimate and non-discriminatory reason for the termination, and the plaintiff is entitled to show that the reasons advanced by the defendant are a pretext for discrimination." *Id.* The parties do not contest that Gluck's rheumatoid arthritis is a recognized disability under the LAD. *See Connolly v. Mitsui O.S.K. Lines (Am.), Inc.*, No. 04-5127, 2007 WL 4207836, at *6 (D.N.J. Nov. 21, 2007).

Here, Gluck fails to present evidence that Vcom replaced him as Alltec Division Manager. According to Goldstein, Gluck's position has not been filled and all employees previously reporting to Gluck have been reporting to Goldstein. Gluck argues that he was replaced by Robert Carroll, another Vcom employee. *See, e.g.*, Gluck Opp. at 13; D.E. 53-4 ¶¶ 49-50. Critically, however, Gluck fails to provide any citations to the record demonstrating that Carroll replaced Gluck. Goldstein certified that Carroll was hired by Vcom on June 11, 2012 as an eCommerce Manager, and still holds this position. Reply Certification of Sheldon Goldstein (D.E. 56-2) ¶ 9. Vcom staff does not report to Carroll and he has no management authority regarding Alltec. *Id.* Without evidence that Carroll, or anyone else, took on the role of Alltec Division Manager, Gluck fails to meet the fourth element in showing a *prima facie* case of discrimination.

But even assuming that Gluck presented a *prima facie* case, Vcom presented evidence of a legitimate and non-discriminatory reason for Gluck's termination, which Gluck has not rebutted. In mid-2012, Vcom began considering selling Alltec due to its financial underperformance, downsizing the division altogether if it could not be sold. Vcom made a legitimate effort in selling Alltec, which included hiring an investment banker for $40,000 to assist in the prospective sale. Although Gluck offered to purchase Vcom himself for $650,000, Gluck needed to raise $245,000 from outside investors by offering preferred stock of Alltec. Gluck presented no evidence that he raised this capital and was capable of purchasing Alltec. Moreover, Vcom was seeking to sell

11

Alltec at a much higher price, around $1.2 million, as evidenced by its offers to other potential purchasers. To this end, Gluck has not submitted competent evidence that $650,000 was a fair and reasonable price for Alltec. After Alltec was not sold to a viable purchaser, Vcom proceeded with the next step of its plan and began downsizing Alltec, which included the elimination of Gluck's position. The decision to terminate Gluck was made on April 12, 2013, which was over a month before Gluck claimed that he needed prescribed time off (and also before Gluck decided that he could work from home while his kitchen was remodeled).

The above-mentioned facts demonstrate that Vcom had legitimate non-discriminatory reasons for Gluck's termination. Further, Gluck has not come forward with any competent evidence to support an inference that Vcom's reasons for termination were pretext for discrimination. Therefore, summary judgment is granted in favor of Vcom as to Gluck's claim of discriminatory discharge.

### ii. Failure to Accommodate

In a failure to accommodate case of LAD disability discrimination, an employee makes a *prima facie* showing by presenting evidence that: "(1) [the employee] was disabled and his employer knew it; (2) [the employee] requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) [the employee] could have been reasonably accommodated." *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006). Essential to the success of such a claim is that the employee make a request for accommodation. However, the request need not be in writing nor does the employee have to use the term "reasonable accommodation." *Tynan v. Vicinage 13 of Superior Court*, 351 N.J. Super. 385, 400 (App. Div. 2002); *see also Photis v. Sears Holding Corp.*, No. 11-6799, 2013 WL 3872519, at *8

12

(D.N.J. July 25, 2013) (granting summary judgment to employer where employee never requested an accommodation).

In this case, Gluck's failure to accommodate claim does not survive summary judgment because he did not request an accommodation until after Vcom made the decision to fire him. It is undisputed that in April 2012, Vcom provided Gluck with a reduced four-day workweek and the ability to work from home after he informed Goldstein that he was diagnosed with rheumatoid arthritis. [7]

On June 4, 2012, Gluck was promoted to Alltec Manager receiving a 60% increase in salary while working only three days per week at Vcom. Nowhere in the email negotiations for Gluck's new position or the June 4, 2012 employment agreement was there any mention that the three-day workweek was put in place due to Gluck's rheumatoid arthritis. To the contrary, immediately before Gluck received his promotion and reduced three-day workweek in June 2012, Gluck indicated that he did not need an accommodation for his arthritis. In order to negotiate a higher salary, Gluck stated that he was capable of making more money in his private consulting business working forty hours per week. Those facts indicate that, as of June 4, 2012, Gluck's reduced three-day workweek was unrelated to his disability because Gluck himself represented he was able to work a full week and did not need an accommodation at that time. Therefore, Gluck has presented insufficient evidence that as of June 4, 2012, he required an accommodation.

After June 4, 2012, Gluck did not claim that he needed an accommodation for his disability until May 23, 2013, when he requested a two-month leave of absence from work. Importantly,

---

[7] The record is not clear regarding the precise dialogue that led to Gluck receiving the initial one-day reduction in work in 2012 after Gluck was diagnosed with Rheumatoid Arthritis. That fact, however, is immaterial because Gluck does not argue that the one-day reduction was unsatisfactory in accommodating his disability.

however, it is undisputed that Vcom's decision to terminate Gluck was made *before* Gluck's request. Vcom decided to terminate Gluck on April 12, 2013. Walsh Cert. Ex. L; D.E. 53-4 ¶ 13. Vcom's intent to terminate Gluck is further evidenced by the termination letter prepared on May 17, 2013. As noted, Gluck was not physically in the office of Vcom starting April 15, 2013. Gluck did not request to go on FMLA leave or request any form of accommodation until six days *after* the letter was finalized.

Therefore, Gluck cannot sustain his claim that Vcom failed to accommodate his request for leave when the request was made after Vcom already decided to terminate him for a reason unrelated to his disability. Gluck points to no evidence in the record that Vcom's decision to terminate Gluck on April 12 was motivated by, or related to, his rheumatoid arthritis in any way. Vcom was downsizing its Alltec Division after ten months of unsuccessful attempts to sell it, which was Vcom's plan all along if the sale could not be completed. Goldstein Dep. at 97:21 to 98:14. Without any evidence that Vcom terminated Gluck because of his disability, or that Vcom ignored any request to accommodate his disability prior to its decision to terminate him, Gluck's failure to accommodate claim cannot survive summary judgment. Therefore, summary judgment is granted in favor of Vcom as to Gluck's failure to accommodate claim.

## IV.    CONCLUSION

For the reasons set forth above, Vcom's motion for summary judgment as to Gluck's counterclaims is granted. An appropriate Order accompanies this Opinion.

Dated: March 27, 2017

John Michael Vazquez, U.S.D.J.